IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Rocío Anani Saucedo-Carrillo, et al., | Case No. 3:12 CV 2571 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| United States of America, | |
| Defendant. | |

## INTRODUCTION

Plaintiffs, a mother and daughter from Mexico now living in Ohio, bring claims under the Federal Tort Claims Act ("FTCA") against the United States, in connection with a September 2009 questioning and subsequent administrative detention by the U.S. Border Patrol for remaining in the United States illegally. This case is related to a civil rights suit brought as a class action in this Court and dismissed in November 2012, in which Plaintiffs were named plaintiffs. *See Muniz-Muniz v. U.S. Border Patrol*, No. 3:09 CV 2865, 2012 WL 5197250 (N.D. Ohio 2012).

Pending before this Court is Defendant United States' Motion for Summary Judgment (Doc. 28), which Plaintiffs have opposed (Doc. 29). For the reasons stated below, the Motion is granted.

## BACKGROUND

Plaintiffs Rocío Saucedo-Carrillo and Rosa Carrillo-Vasquez are daughter and mother who legally entered the United States through Laredo, Texas under a six-month visitors visa on or about January 13, 2001 (Doc. 28-3, Saucedo-Carrillo Dep. 8; Doc. 28-2, Carrillo-Vasquez Dep. 8–9; Doc.

28-1, Shaver Dep. 96; Doc. 28-4, Shaver Decl. ¶ 4). Plaintiffs overstayed their six-month visas and are currently in the United States without proper documentation (Shaver Dep. 96).

On September 13, 2009, U.S. Border Patrol Agent Bradley Shaver encountered Plaintiffs at a Norwalk, Ohio Marathon gas station. Plaintiffs stopped for gas after a trip to the nearby K-Mart (Saucedo-Carrillo Dep. 18; Carrillo-Vasquez Dep. 15). Rocío had been driving and Rosa was in the passenger seat (Saucedo-Carrillo Dep. 19). They were traveling in a blue truck with two silver scorpion decals in the back window with the words "Durango Durango" (Saucedo-Carrillo Dep. 19–20; Shaver Dep. 46; Carrillo-Vasquez Dep. 16). The rear windows were tinted (Saucedo-Carrillo Dep. 21). The truck also had flares such that the wheel wells flared out from the truck and a vanity license plate with the name "Anani" (Rocío's middle name) (Shaver Dep. 46; Saucedo-Carrillo Dep. 21–22).

Agent Shaver was traveling on State Route 250 when he observed the truck parked at the gas station (Shaver Dep. 46). Agent Shaver testified that, in his experience, large flares were "often used to hide narcotics on the undercarriage of the vehicle" (*id.*) and that "Durango" is a state in Mexico "known with drug-trafficking organizations . . . down in that area for use in smuggling across the country, narcotics into the country" (*id.*). Agent Shaver further testified that "scorpions are one of the logos used by drug-trafficking organizations" (*id.* 47). Given the appearance of the truck and its close proximity to the Ohio turnpike, Agent Shaver testified he suspected the truck may be involved in illegal narcotic activity and decided to investigate further (*id.*).

Agent Shaver then pulled into the gas station parking lot "to get a closer look at the vehicle" (*id.*). At that time he observed Rosa in the front passenger seat (*id.*). However, Rocío testified that Agent Shaver pulled into the gas station only after he saw her exiting the station food mart back to her car which was parked at a gas pump (Saucedo-Carrillo Dep. 32) ("I saw the gentleman from the

2

truck from Border Patrol. We looked at each other's eyes, he looked at me, I looked at him, and he put his signals [on].").

As Rocío walked by Agent Shaver's vehicle, he began speaking to her in English (Shaver Dep. 49). Agent Shaver testified that, at this point, his vehicle was in between the food mart and the front of Plaintiffs' truck, but not blocking Plaintiffs' truck; they could have pulled forward or reversed (*id.*). In contrast, Rocío testified that Agent Shaver parked his vehicle immediately in front of her truck such that she could not have pulled forward (Saucedo-Carrillo Dep. 37–39), but could have put her truck in reverse and backed out (*id.* 38–39).

Rocío began filling the truck with gas, and Agent Shaver began asking Rocío questions about where she was from (Shaver Dep. 51; Saucedo-Carrillo Dep. 40). The parties dispute whether Agent Shaver was in his vehicle or on foot when he began asking Rocío questions (Saucedo-Carrillo Dep. 52; Carrillo-Vasquez Dep. 24–25; Shaver Dep. 50–52). Rocío testified Agent Shaver was "less than one meter" from her as she filled her truck with gas, and he began asking her questions (Saucedo-Carrillo Dep. 53). Agent Shaver testified he remained in his vehicle during this initial questioning and did not exit his vehicle until Rocío leaned into the truck to speak with Rosa (Shaver Dep. 52).

Agent Shaver asked Rocío for identification and for her "papers" (Saucedo-Carrillo Dep. 43–44). She provided Agent Shaver with a Michigan driver's license (*id.* 40) which Agent Shaver kept "throughout the whole time" (*id.* 44). Rosa provided Agent Shaver with a health insurance card (*id.*; Carrillo-Vasquez Dep. 32). Rocío continued filling the truck with gas (Saucedo-Carrillo Dep. 51). Agent Shaver never told Plaintiffs they could not leave (*id.* 54).

3

At some point,[1] Agent Shaver asked Rocío who owned the truck. Rocío responded that the truck was hers, but it was registered in the name of Rocío's brother-in-law (Saucedo-Carrillo Dep. 22–23; Shaver Dep. 51).

As Rocío continued filling the truck with gas, Agent Shaver spoke with Rosa (who was still seated in the truck's passenger seat) in Spanish and asked if she was from the area (Saucedo-Carrillo Dep. 51; Shaver Dep. 51–52). Rosa responded that she was originally from Mexico (Shaver Dep. 52). Plaintiffs told Agent Shaver they entered the United States on a visa permitting them to stay in the United States for ten years (Saucedo-Carrillo Dep. 46). There is no such visa (Shaver Decl.¶ 5). Agent Shaver obtained Plaintiffs' names and birth dates to radio the Detroit sector for an immigration inquiry (Shaver Dep. 61).

Rocío testified she was afraid of Agent Shaver because he was "very aggressive" and because of the "tone" he used in his questioning (Saucedo-Carrillo Dep. 54–55). Rosa testified she felt "scared because of the way he put his car – truck in front of us" and because he was "authoritative" (Carrillo-Vasquez Dep. 38, 40).

Plaintiffs admitted to Agent Shaver that they had overstayed their visas (*id.* at 96; Saucedo-Carrillo Dep. 46). Agent Shaver then asked Rocío to move her car away from the gas pump and into a parking spot, which she did (Saucedo-Carrillo Dep. 48). Agent Shaver allowed Rocío to give her truck keys to an acquaintance who happened to be at the gas station (*id.* 49)

He then took Plaintiffs into custody, placing them in the back of his vehicle and transporting them to the Border Patrol station in nearby Sandusky for administrative processing (Shaver Decl.

---

[1] Agent Shaver testified he asked who owned the truck near the beginning of the encounter, before he asked Plaintiffs for identification (Shaver Dep. 51). Rocío testified the discussion about who owned the truck occurred near the conclusion of the encounter at the gas pump, after Plaintiffs provided Agent Shaver with identification and after telling Agent Shaver they entered the United States on a visa (Saucedo-Carrillo Dep. 45–46).

4

¶¶ 7– 8). When Plaintiffs were in the back of Agent Shaver's vehicle, Rosa informed Agent Shaver that Rocío was pregnant (Saucedo-Carrillo Dep. 57). Plaintiffs were processed and released that day (Shaver Dep. 103–04). At no time were Plaintiffs handcuffed (*id.* 105).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, this Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## ANALYSIS

Under the FTCA, the United States is liable for certain torts committed by its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Ohio law governs Defendant's liability in this case. *See* 28 U.S.C. § 1346(b).

In its Motion, Defendant argues that all of Plaintiffs' tort claims fail on the merits. In the alternative, Defendant asserts it is entitled to immunity under Ohio Revised Code § 2744.03(A)(6). Because this Court grants in full Defendant's Motion on the merits, it declines to address the immunity argument.

**Assault and Negligent Infliction of Emotional Distress Claims**

Plaintiffs concede summary judgment is appropriate with respect to their assault and negligent infliction of emotional distress claims (Doc. 29 at 1).

**False Imprisonment/False Arrest Claim**

The tort of false imprisonment concerns "purely a matter between private persons for a private end," as opposed to a false arrest, which is an unlawful detention "by reason of an asserted legal authority to enforce the process of law." *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960). However, the elements of the two torts are nearly identical, *Evans v. Smith*, 97 Ohio App. 3d 59, 70 (1994), requiring: (1) an intentional detention (2) taking place in a limited area (3) for any appreciable time, "however short" (4) without a lawful privilege and (5) without the detainee's consent. *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 854–55 (N.D. Ohio 2005) (citing *Feliciano v. Kreiger*, 50 Ohio St. 2d 69, 71 (1977) and *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003)). Malice, motive, or lack of probable cause are not elements. *Thacker*, 328 F.3d at 261 (citing *Tucker v. Kroger Co.*, 133 Ohio App. 3d 140, 146 (1999)).

Plaintiffs claim they were unlawfully detained when Agent Shaver initially approached them near the gas pumps and began asking Plaintiffs for identification (Doc. 29 at 11). Construing the facts in favor of Plaintiffs, as this Court must, such that Agent Shaver parked directly in front of Plaintiffs' truck and began questioning in an aggressive manner, this Court finds Plaintiffs were not detained at the outset of the encounter. It is undisputed that Agent Shaver never told Plaintiffs they were not allowed to leave; Plaintiffs were initially free to continue their business, which Rocío did as she continued to fill the gas tank. Even if Agent Shaver's vehicle was parked directly in front of the truck, Plaintiffs admit they had sufficient room to back up and leave. In *Williams v. Franklin County Bd. of Comm'rs*, the court held that plaintiff failed to establish the confinement element of her false

6

imprisonment claim because "there was no evidence . . . that she would have been prevented [from leaving] had she tried," noting "there was at least one other means of egress." 145 Ohio App. 3d 530, 550 (2001). That Plaintiffs believed they were confined by the placement of Agent Shaver's vehicle is not determinative. *See Sharp v. Cleveland Clinic*, 176 Ohio App. 3d 226, 233 (2008) ("False imprisonment may not be predicated on a person's unfounded belief that she was restrained."). In fact, it is common for cars to park immediately in front of other cars at gas station pumps, requiring a car to reverse to depart. Surely such instances do not constitute confinement.

Nor does the fact Agent Shaver asked questions require a conclusion that Plaintiffs were restrained. "[S]ubmission to the mere verbal direction of another, unaccompanied by force or threats of any character, cannot constitute false imprisonment, . . . and false imprisonment may not be predicated on a person's unfounded belief that he was restrained." *Bauman v. Bob Evans Farms, Inc.*, 2007-Ohio-145 at ¶ 18 n.4 (Ohio Ct. App. 2007) (quoting *Kinney v. Ohio Dep't of Admin. Servs.*, 1988 WL 92433 (Ohio Ct. App. 1988)); *see also Ferraro v. Phar-Mor, Inc.*, 2000 WL 459686 (Ohio Ct. App. 2000) (holding that "mere submission to verbal direction, unaccompanied by force or threat, cannot constitute confinement or detention"). The record is devoid of evidence that Agent Shaver's questions were "accompanied by force or threat." Testimony that Agent Shaver's tone was "harsh" does not equate to "force or threat." Furthermore, Agent Shaver was permitted to ask questions without cause. *See United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry."). Agent Shaver also was free to ask for Plaintiffs' identification, provided he did not condition their departure on production of identification or "convey a message that compliance with [his] requests is required." *United States v. Hinojosa*, 2013 WL 4483523, at *3 (6th Cir. 2013) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

Here, the administrative detention did not occur until after Plaintiffs told Agent Shaver they entered the United States on a ten-year visa and admitted that they were in the country illegally. Agent Shaver then instructed Plaintiffs to move the truck and to get in the back seat of his vehicle. At this juncture, Agent Shaver had probable cause to detain Plaintiffs, and thus the detention was privileged. *See* 8 U.S.C. § 1357; *United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir. 2010) (finding border patrol agent had probable cause to believe defendant was an alien subject to deportation, as required to make a warrantless administrative arrest under 8 U.S.C. § 1357).

**Intentional Infliction of Emotional Distress Claim**

Defendant argues that the tort of intentional infliction of emotional distress ("IIED") is excepted from liability under the "law enforcement proviso" found in 28 U.S.C. § 2680(h) (Doc. 28 at 18). Defendant, however, has not directed this Court to any controlling case law holding that the proviso bars Plaintiffs' IIED claim, and this Court declines to make a finding about the application of the law enforcement proviso to this claim. However, Defendant's Motion is granted with respect to this claim because Plaintiffs have not pointed to evidence from which a jury could reasonably find in their favor.

A plaintiff in an action for IIED must establish the following:

(1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App. 3d 40, 61 (2009) (citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App. 3d 359, 366 (1990)).

8

This claim requires the plaintiff to suffer emotional distress that is serious. *See Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983); *Watkins v. Millennium Sch.*, 290 F. Supp. 2d 890, 903 (S.D. Ohio 2003) (citing *Yeager v. Local Union 20*, 6 Ohio St. 3d 369 (1983)). The seriousness of the emotional distress goes "beyond trifling mental disturbance, mere upset or hurt feelings." *Paugh*, 6 Ohio St. 3d at 78. The emotional injury must be "both severe and debilitating," such that a reasonable person "would be unable to cope adequately with the mental distress engendered by the circumstances of the occurrence." *Id.*; *see also Watkins*, 290 F. Supp. 2d at 903 (citing *Miller v. Currie*, 50 F.3d 373, 378 (6th Cir. 1995)).

In order to defeat a summary judgment motion for a claim of emotional distress, a plaintiff must submit sufficient evidence to create an issue of fact regarding the severity of his or her injury. *Watkins*, 290 F. Supp. 2d at 903 (finding that plaintiff raised a genuine issue of material fact as to his emotional distress when he submitted an affidavit from his wife detailing the various symptoms of his distress). It is appropriate for a district court to determine on a summary judgment motion whether a plaintiff's alleged emotional distress is sufficiently serious as a matter of law. *Miller*, 50 F.3d at 377–78; *Miller v. City of Columbus*, 920 F. Supp. 807, 824 (S.D. Ohio 1996).

This Court finds Plaintiffs' allegations of emotional distress fail because they did not submit evidence of mental suffering that goes beyond mere run-of-the-mill fear of an encounter with an authoritative figure. *See Paugh*, 6 Ohio St. 3d at 78. Being scared and intimidated during their conversation with Agent Shaver is simply not enough.

In short, there is no record evidence supporting an assertion that Plaintiffs' alleged emotional distress was serious and debilitating. Plaintiffs submitted no affidavits detailing symptoms of their distress, no evidence that they sought medical or psychiatric help post-incident, or that they were unable to function normally. *See City of Columbus*, 920 F. Supp. at 824 ("Ohio courts have held that

9

an emotional injury is not severe and debilitating where the plaintiff fails to show that he sought medical or psychiatric help or was unable to work or otherwise function in his daily life.") (internal citations omitted).

A court may also find as a matter of law that a defendant's conduct was not so severe and outrageous as to be sufficient for an IIED claim. *Miller*, 50 F.3d at 377. This Court finds that Agent Shaver's conduct was not "extreme and outrageous" as to go "beyond all possible bounds of decency and . . . be considered completely intolerable in a civilized community." *See Morrow*, 183 Ohio App. 3d at 61. Agent Shaver approached Plaintiffs at a public gas station asking basic questions and for identification. Agent Shaver neither threatened Plaintiffs nor accused them of a crime. Only after Plaintiffs admitted they were in the country on expired visas did Agent Shaver detain them, without handcuffs, in the back of his vehicle. Plaintiffs were released later that day after they were processed at the Border Patrol station. Agent Shaver's conduct of posing questions to Plaintiffs in a public place and briefly detaining them after they admitted they were in violation of the law cannot be classified as extreme and outrageous.

**Deprivation of Civil Rights Claim**

Defendant once again argues that the United States is excepted from liability for this state statutory tort under the law enforcement proviso in 28 U.S.C. § 2680(h) (Doc. 28 at 20–21). Again, with no controlling case law holding that the proviso bars Plaintiffs' civil rights claim, this Court declines to make a finding about the application of the law enforcement proviso. However, Defendant's Motion is granted with respect to this claim because Plaintiffs point to no evidence from which a jury could reasonably find in their favor.

The Ohio Revised Code identifies five types of conduct that can serve as a basis for a civil remedy when committed "by reason of the race, color, religion, or national origin of another person

or group of persons." R.C. § 2927.12. The five types of conduct are: (1) aggravated menacing; (2) menacing; (3) criminal damaging or endangering; (4) criminal mischief; and (5) telecommunications harassment. *Id.* Plaintiffs argue that the acts of Agent Shaver constituted menacing or aggravated menacing (Doc. 29 at 19).

Menacing is defined as "knowingly caus[ing] another person to believe that the offender will cause physical harm to the person or property of the other person, the person's unborn, or a member of the other person's immediate family." R.C. § 2903.22. The definition of aggravated menacing is similar but results in a belief that the offender will cause "serious physical harm." R.C. § 2903.21(A). Although the offender does not need to verbalize the threat in order to engage in menacing, the victim must "genuinely believe[] that he or she is facing physical harm to person or property." *Cleveland Metroparks v. Lawrence*, 2012-Ohio-5729, at ¶ 6 (Ohio Ct. App. 2012) (citing *State v. Sperk*, 2009-Ohio-1615, at ¶ 33 (Ohio Ct. App. 2009)). The offender must act to "knowingly cause[] the victim to believe that the threat will be executed." *City of Niles v. Holloway*, 1997 WL 665974 (Ohio Ct. App. 1997) (citing Committee Comments to R.C. §§ 2903.21 and 2903.22).

Plaintiffs argue Agent Shaver's conduct caused them to be "afraid for themselves, each other, and for Plaintiff Saucedo-Carrillo's unborn baby" (Doc. 29 at 19). Specifically, Plaintiffs cite Agent Shaver's actions of targeting them, pulling up in his vehicle, blocking their vehicle, and "walking toward them in an aggressive manner," in addition to asking questions and asking for identification (*id.*). However, this testimony reveals no express or implied threats of physical harm to Plaintiffs, Rocío's unborn baby, or their property. Plaintiffs did not testify that they interpreted the questioning as a threat of physical harm. Rather, Rosa testified she felt "scared because of the way he put his car – truck in front of us" and because he was "authoritative" (Carrillo-Vasquez Dep. 38, 40), and Rocío

testified she was afraid because of Agent Shaver's non-specified "aggression" in the manner he asked questions (Saucedo-Carrillo Dep. 53–54)

Nothing in the record supports allegations that Agent Shaver knowingly caused Plaintiffs to reasonably believe he would physically harm them or that Plaintiffs actually believed they were facing such harm. In fact, Rocío continued pumping gas throughout the encounter. Without evidence or fear of harm, the claim for ethnic intimidation through menacing or aggravated menacing fails as well as a matter of law.

## CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 28) is granted as to all claims, and this case dismissed.

IT IS SO ORDERED.

                                          s/ *Jack Zouhary*
                                        JACK ZOUHARY
                                        U. S. DISTRICT JUDGE

October 21, 2013